Roy F. BRENNING III, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 93–137.

Supreme Court of Wyoming.

March 11, 1994.

Leonard D. Munker, State Public Defender, and Deborah Cornia, Appellate Counsel, Public Defender Program, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., D. Michael Pauling, Sr. Asst. Atty. Gen., and Lori L. Gorseth, Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

MACY, Chief Justice.

Appellant Roy F. Brenning III pleaded guilty to six counts of grand larceny by bailee and was sentenced to incarceration, ordered to pay restitution, and assessed a surcharge to be paid to the crime victims' compensation account. He appeals from the terms of his sentence.

We affirm.

Appellant poses two issues for our review:

Issue I

Whether W.S. § 7–13–421(c) violates the constitutional requirement of separation of powers[.]

Issue II

Whether the trial court improperly ordered restitution at sentencing[.]

Appellant had been the Clerk and Treasurer for the Town of Afton, Wyoming, for approximately fourteen years. He and his wife had a comfortable yearly income of approximately $55,000. They and their three children lived in a $150,000 house. Appellant was active in his church, was liked in the community, and was known to be a caring father.

Sometime in 1987, Appellant began to sense that his marriage was in trouble, and he began to worry about whether he was providing enough material comfort to his family. He began to steal cash from the Town and to use it to buy "snow machines, four[-]wheelers, motor[ ]cycles, [and] trips" for his family.

Appellant admitted that, between 1987 and 1992, he took cash from the Town's golf course revenue and from other enterprises operated by the Town. To conceal his thefts, Appellant altered the Town's records and receipts. Although he did not maintain accurate records of his thefts, Appellant admitted that he took at least $107,218.23.

While Appellant was using the Town's money to pay for his family's recreation, the Town officials were struggling to overcome budget shortfalls and to maintain basic civil services. Because of its budget troubles, the Town was forced to lay off at least two employees.

On February 1, 1993, Appellant was charged with six counts of felony larceny by bailee: one count per year for his thefts from 1987 through 1992. He pleaded guilty pursuant to a plea agreement in which he agreed to pay restitution to the Town. The sentencing court sentenced Appellant to serve not less than one year nor more than five years in the Wyoming State Penitentiary and ordered him to pay $116,696.67 [1] in restitution to the Town and to pay a surcharge to the crime victims' compensation account. The sentencing court added $6,980.93 for the cost of the Town's audit and $3,323 for additional missing funds to the $107,218.23 which Appellant had agreed to pay. Appellant does not challenge the amount of the ordered restitution.

Appellant argues that, since it found that he did not have an ability to pay, the sentencing court exceeded its sentencing authority by ordering him to make restitution. We disagree.

WYO.STAT. § 7–9–102 (Supp.1993) states:

In addition to any other punishment prescribed by law the court shall, upon conviction for any misdemeanor or felony, order a defendant to pay restitution to each victim as determined under W.S. 7–9–103 and 7–9–114 unless the court specifically finds that the defendant has no ability to pay and that no reasonable probability exists that the defendant will have an ability to pay.

Under that section and WYO.STAT. § 7–9–103 (Supp.1993), a sentencing court not only has authority to order a defendant to pay restitution but must order the defendant to pay restitution unless the sentencing court specifically finds that the defendant is unable to pay. *Helmlinger v. State*, 855 P.2d 363, 365 (Wyo.1993) (citing *Murray v. State*, 855 P.2d 350 (Wyo.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 693, 126 L.Ed.2d 660 (1994)). "Al-

1. In arriving at this figure, the sentencing court omitted approximately $825 which Appellant had agreed to pay. We do not resolve this issue because it is not clear from the record whether the omission was intentional. If the omission were a mere clerical or mathematical error, the sentencing court would have the authority to make a correction. W.R.Cr.P. 36.

though the court is not required to specifically find that a defendant has the ability to pay, the record must still contain evidence to support the existence of a present or future ability to pay." *Murray,* 855 P.2d at 359.

■ Appellant claims that the sentencing court found that he was unable to pay when it made the following statements:

> In addition to that, Mr. Brenning, I have a suspicion that the only compensation that the City of Afton or Western Surety Company will receive from you—

> Let's put it a different way. That the largest amount of compensation that Western Surety and the City of Afton shall receive from you is incarceration. I have a strong suspicion, Mr. Brenning, that $116,000 will be beyond your lifetime ability to repay. And if there would be any restitution to the—to the people who have lost it, it will probably be through the punishment that's imposed. I would be reluctant to give you probation with the requirement that you make restitution because I think that this Court would be giving to you a built in Petition for Revocation of Probation with a long argument concerning whether or not it was a willful failure to pay restitution. I can only—I don't think that's in the realm of speculation. I think it is in the realm of reasonable possibility, Mr. Brenning.

The sentencing court's "strong suspicion" that a "reasonable possibility" existed that Appellant would not be able to make complete restitution does not rise to the level of being the specific finding required under § 7–9–102. The evidence submitted regarding Appellant's ability to pay tempered the sentencing court's statements. According to Appellant, he owned assets valued at approximately $76,000. He also had substantial liabilities, including: a $4,000 outstanding automobile loan; a $3,000 outstanding personal loan; a $6,000 credit card debt; and a possible judgment in a related civil lawsuit. Appellant thus held net assets worth up to $63,000 which, if they were liquidated, would leave only approximately $53,000 remaining on the restitution obligation.

Although Appellant also had a monthly child support obligation of $400, he repeatedly assured the sentencing court that he planned to pay the entire restitution amount. He testified that, in order to earn enough money to pay the restitution, he had been working, submitting job applications, and taking night classes to earn a master's degree in order to improve his job opportunities.

The record contained ample evidence to support a finding that Appellant had an ability to pay. We hold that the sentencing court had not only the authority but also a duty to order Appellant to pay restitution.

Appellant also argues that he was sentenced in violation of the Wyoming Constitution's separation of powers requirement. WYO. CONST. ART. 2 § 1. He argues that WYO.STAT. § 7–13–421(c)(ii) (1987) violates the separation of powers requirement in his case because that statute might permit the parole board to perform both legislative and judicial functions by allowing the board to extend the period of his possible parole in the event he fails to make restitution. WYO.STAT. § 7–13–421 (1987) provides in pertinent part:

> (b) The board shall provide for restitution in the amount determined by the court pursuant to W.S. 7–9–103 unless the board finds the parolee is not reasonably capable of making the payments, in which case the board may modify the amount of restitution to be paid, taking into account the factors enumerated in W.S. 7–9–106.

> (c) If the parolee fails to pay the restitution as provided by this section the board may:

> > (i) Modify the amount of the restitution;

> > (ii) Extend the parole period to accommodate the parolee's ability to pay restitution; or

> > (iii) Revoke the parole.

> (d) The board may waive the payment of some or all of the restitution as a condition of parole if it finds the payment of some or all of the restitution will work an undue hardship on the parolee or his family. If the victim can be located through the exercise of reasonable diligence, he shall be given notice and an opportunity to be heard prior to the board making a

decision to waive some or all of the restitution under this subsection.

We decline to address this issue because it is not ripe for review. Appellant does not claim that his parole period has been extended or even that he has been granted parole. Instead, Appellant argues that, because the restitution amount which he was ordered to pay was so great, the parole board will inevitably need to extend the duration of his possible parole in order to enable him to pay the full amount.

 "We evaluate ripeness in two prongs, which include, first, an evaluation of the fitness of the issues presented for judicial review and, second, an evaluation of the hardship to the parties if judicial review is denied." *BHP Petroleum Company, Inc. v. State Tax Commission,* 766 P.2d 1162, 1165, *after remand,* 784 P.2d 621 (Wyo.1989). The doctrine of ripeness applies to the parole board's decisions. *See Duffy v. State,* 789 P.2d 821 (Wyo.1990).

Here, neither prong of the ripeness test has been met. First, because the parole board has not exercised its authority under § 7–13–421(c), we have not been presented with a decision to review. We prefer not to examine hypothetical decisions which the parole board may make. Without the parole board having taken any action, the issue raised by Appellant is not ripe for our review.

Second, aside from the hardship his lawful sentence caused, we cannot foresee any further hardship being caused to Appellant if he is forced to wait and see whether the parole board grants and then extends his parole. Appellant may appropriately seek review when he can demonstrate that the parole board has made some adverse decision.

We note that the parole board's decisions are now exempt from the provisions of the Wyoming Administrative Procedure Act, including the provisions for judicial review under Wyo.Stat. §§ 16–3–114 and 16–3–115 (1990). Wyo.Stat. § 7–13–402(f) (Supp.1993). A parolee does, nevertheless, have other remedies available to him for adverse decisions which may be made by the parole board. *See, e.g., Pisano v. Shillinger,* 814 P.2d 274 (Wyo.1991) (petition for a writ of habeas corpus to determine right to bail pending parole revocation hearing).

Because the issue is not ripe for review, we decline to decide whether § 7–13–421(c)(ii) violates the separation of powers requirement.

Affirmed.